O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| WIRELESS WAREHOUSE, INC., ) | Case No. SACV 09-1436-MLG |
| ) | |
| Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
| ) | DENYING DEFENDANT'S MOTION TO |
| v. ) | COMPEL ARBITRATION AND STAY |
| ) | PROCEEDINGS, OR IN THE |
| BOOST MOBILE, LLC, ) | ALTERNATIVE, TO DISMISS COMPLAINT |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Wireless Warehouse, Inc. has brought this action against Defendant Booth Mobile, LLC, based on Defendant's alleged false promises and interference with Plaintiff's business relationships. The matter is before the Court on Defendant's motion to compel arbitration and stay proceedings, or in the alternative, to dismiss the complaint. For the reasons set forth below, the Court DENIES Defendant's motion.

**I.   Facts and Procedural History**

Plaintiff Wireless Warehouse, Inc., a Georgia Corporation, is a wireless communications master dealer that provides services to

hundreds of sub-dealers in the United States. (Compl. ¶6.) Defendant Boost Mobile, LLC is a division of Sprint that offers wireless phones and services without contracts or activation fees. (Compl. ¶7.) Plaintiff and Defendant entered into a one-year Prepaid Wireless Product Agreement in 2005, which they renewed in March of 2006, and again on March 7, 2007. (Compl. ¶7.)

The agreement at issue is the Prepaid Wireless Product Agreement that the parties executed on March 7, 2007, with an effective date of April 1, 2007. The Agreement created a distributor-supplier relationship between the parties and outlined the terms by which Wireless (the distributor) was to sell Boost's products. (Anderson Decl. Ex. A.)

The Agreement stated that "The following provisions, and the Attachments to this Letter, govern the relationship between the parties[.]" (Anderson Decl. Ex. A at 1.) The Agreement further stated that its terms would be "From and including April 1, 2007 (the "Effective Date") to but excluding the first anniversary of the Effective Date." (Anderson Decl. Ex. A at 1.) It also provided that "[t]his Agreement expires at the end of the Term unless renewed in writing by the parties." (Anderson Decl. Ex. A at 12.) The Agreement could be terminated "by Supplier for its convenience, for any reason or no reason, upon thirty (30) days written notice to the Distributor." (Anderson Decl. Ex. A at 17.)

The Agreement contained the following additional relevant provisions:

**Governing Law:** This Agreement is governed by the laws of the Commonwealth of Virginia, regardless of conflicts of law provisions.

**Entire Agreement; Conflicts:** This Agreement, including its exhibits, constitutes the final and full understanding between the parties and supercedes all previous agreements, understandings, negotiations and promises, whether written or oral, between the parties with respect to its subject matter. This agreement is intended to supercede all previous agreements on the same subject matter that Distributor previously signed with Supplier. No amendments to this Agreement will be binding on either party unless executed by both parties in writing.

**Non-Waiver**: No waiver of any term or condition of this Agreement, either generally or in a particular instance, will be effective unless waiver is in writing and signed by an authorized person of the party against which the waiver is being asserted.

(Anderson Decl. Ex. A at 19.)

The Agreement also included a Dispute Resolution Addendum, stating that "All Disputes under this Agreement are subject to the following dispute resolution process." (Anderson Decl. Ex. A at 25.) The Addendum required that, in the event of a dispute under the Agreement, the parties must first engage in negotiation. (Anderson Decl. Ex. A at 25.) If negotiation does not resolve the matter, they must then submit the dispute to mediation. (Anderson Decl. Ex. A at 25.) If mediation does not prove successful, the parties must comply with the following arbitration clause:

*Arbitration.* No party may commence arbitration until

3

a Dispute has been subject to both negotiation and mediation in accordance with this Agreement. Either party may initiate arbitration with respect to a Dispute by filing a written demand for arbitration pursuant to the Wireless Industry Arbitration Rules of the AAA at any time after the 45th calendar day following the date that a request for mediation of such Dispute was first submitted, or, if earlier, the date that mediation is terminated. This applies to all causes of action, whether nominally a "claim," "counterclaim," or "cross-claim," arising under common law or any state or federal statute.

(Anderson Decl. Ex. A at 25.) The Addendum also included the following provisions:

**Waiver of Rights.** Supplier and Distributor each waive: their rights to litigate Disputes in court, except as set forth in Section 4 of this Addendum below;[1] to receive a jury trial; and to participate as a plaintiff or as a class member in any claim on a class or consolidated basis or in a representative capacity.

**Survival.** The provisions of Addendum will continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

_____

[1] Section 4 of the Addendum permits Supplier to seek injunctive relief from a court.

4

(Ex. A at 26.)

Plaintiff alleges that in or before June 2007, Boost launched a new unlimited service product, which Plaintiff began to sell. (Compl. ¶8.) According to Plaintiff, Boost invited Plaintiff's representative to its main business office in Irvine, California on or about June 1, 2007, for the purpose of expanding its market for the new product. (Compl. ¶8.) Per Boost's invitation, Plaintiff's representative also attended a conference in Irvine on June 12, 2007. (Compl. ¶8.) Plaintiff further alleges that while Plaintiff's representative was in California, the CEO and Vice President of Boost, acting on Boost's behalf, promised Plaintiff that Boost would enter into a long-term business partner relationship if Plaintiff would have its sub-dealers across the nation sell Boost's unlimited service, switching their service from T-Mobile to Boost. (Compl. ¶9.)[2] According to Plaintiff, as of March 2007, 95% of its business was with T-Mobile. (Compl. ¶7.) Plaintiff alleges that Boost also promised to pay Plaintiff $1.00 per payment and $3.00 per product if Plaintiff would make its sub-dealers sign up as Boost's prepaid service payment centers. (Compl. ¶9.) Plaintiff alleges that Boost confirmed these promises numerous times thereafter. (Compl. ¶9.)

Plaintiff further alleges that, in reliance on Boost's promises,

---

[2] Plaintiff has submitted the declaration of its representative Howard Kim, who provides additional information regarding Boost's alleged representations. (Docket No. 19.) Defendant has filed a motion to strike Mr. Kim's declaration based on lack of foundation; that it is vague, ambiguous, and conclusory; lack of relevance; and that "the statements are inadmissible in that they purport to contradict the terms of a written contract." (Docket No. 21.) The Court DENIES Defendant's motion to strike the declaration. The Court, however, declines to consider the Kim Declaration in ruling on Defendant's motion, given that it is outside the pleadings.

it undertook the following actions from June 12, 2007 to March 31, 2008: (1) set up new facilities across the nation to handle Boost's new product, signing a five-year lease for new warehouses; (2) hired eight additional employees; (3) sent its representative to meet with its sub-dealers in order to convince them to promote Boost's new product and to sign up as Boost payment centers; (4) trained its sub-dealers to handle Boost's product and service; and (5) moved to a larger facility with higher rent and signed a five-year lease in order to expand the market for Boost's new product and services. (Compl. ¶11.)[3] Plaintiff alleges that, as a result of these efforts and investments, its sub-dealers collected 14,000 payments and were adding 3000 new subscribers per month by January 2008. (Compl. ¶12.)

According to Plaintiff, in or about March 2008, Boost terminated its business relationship with Plaintiff and refused to renew its Prepaid Wireless Product Agreement with Plaintiff. (Compl. ¶15.) Plaintiff also alleges that Boost sent notices to all of Plaintiff's sub-dealers stating that Plaintiff could no longer act as Boost's master dealer, causing all of Plaintiff's sub-dealers to terminate their relationships with Plaintiff. (Compl. ¶13.) According to Plaintiff, Boost then placed a close friend of its executive officer in the position of master dealer and paid this individual $1.00 per payment and $3.00 per product based upon transactions made by Plaintiff's sub-dealers. (Compl. ¶13.) Plaintiff alleges that as a result of Plaintiff's reliance on Defendant's promises, Plaintiff sustained actual damages in excess of $4,000,000. (Compl. ¶16.)

---

[3] Plaintiff alleges that Boost's promises and Plaintiff's actions fell outside the scope of the Agreement. (Pl.'s Opp'n at 5-6.)

Plaintiff further alleges that Defendant intentionally disrupted Plaintiff's business relationship with its 780 sub-dealers. (Compl. ¶¶21-23.)

On December 8, 2009, Plaintiff Wireless Warehouse, Inc. filed a complaint against Defendant Boost Mobile, LLC alleging (1) false promise; (2) promissory estoppel; (3) intentional interference with prospective economic relations; and (4) unfair, deceptive or illegal acts or practices in violation of California Business and Profession Code § 17200 et seq. (Docket No. 1.) Plaintiff seeks $4,000,000 in compensatory damages as well as punitive damages according to proof at trial. (Compl. ¶25.) The parties consented to the exercise of jurisdiction by this United States Magistrate Judge on December 20, 2009 and January 14, 2010.

On January 13, 2010, Defendant filed a motion to compel arbitration and stay proceedings, or in the alternative, to dismiss the complaint. On February 1, 2010, Plaintiff filed an opposition to Defendant's motion.[4] On February 9, 2010, Defendant filed a reply. The Court heard oral argument on March 2, 2010 and took the matter under submission. This matter is now ready for decision.

**II.  Standard of Review and Applicable Law**

Since the arbitration clause at issue in this case is part of a contract "evidencing a transaction involving commerce," the Federal Arbitration Act applies. *See* 9 U.S.C. § 2. The Federal Arbitration

---

[4] In its opposition, Plaintiff contends that Defendant's motion should be denied because of Defendant's alleged failure to comply with Local Rule 7-3. The Court declines to rule on this basis, having determined that it is more appropriate to assess the merits of Defendant's motion to compel arbitration.

Act (FAA), 9 U.S.C. § 4, permits a party to an arbitration agreement to petition the court to compel arbitration. A district court must compel arbitration under the FAA if it determines that (1) a valid arbitration agreement exists; and (2) the dispute falls within the terms of that agreement. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). While the Agreement provides that it is governed by Virginia law, the scope of the Agreement's arbitration clause is governed by federal law. *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (noting the "clear federal policy in favor of arbitration" embodied in the FAA); *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984) ("We ordinarily will not except a controversy from coverage of a valid arbitration clause 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (internal citations omitted)). But "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Thus, "ultimately[] the issue of arbitrability 'is to be determined by the contract entered into by the parties.'" *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir. 1983) (quoting *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionary Workers*

1  *Int'l*, 370 U.S. 254, 256 (1962)).[5]

2

3  **III. Discussion**

4      **A.   Breadth of Agreement's Arbitration Clause**

5      Defendant argues that this Court should grant its motion to

6  compel arbitration because the claims set forth in Plaintiff's

7  complaint are subject to the Dispute Resolution Addendum and its

8  arbitration clause.[6] Defendant relies on the sentence in the

9  arbitration clause that states that it "applies to all causes of

10  action, whether nominally a 'claim,' 'counterclaim,' or 'cross-

11  claim,' arising under common law or any state or federal statute."

12  (Anderson Decl. Ex. A at 25.) According to Defendant, this language

13  suggests that the arbitration clause applies broadly and must

14  encompass Plaintiff's claims brought pursuant to California common

15  law or statute. (Def.'s Mot. at 5-6.)

16      Plaintiff responds that the relevant provision governing the

17  scope of the arbitration clause is the first sentence of the Dispute

18  _____

19      [5] Defendant has, in the alternative, filed a motion to dismiss
based on the arbitration requirement in the Agreement. (Def.'s Mot. at
20  7.) Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of
a complaint for "failure to state a claim upon which relief can be
21  granted." To survive a motion to dismiss for failure to state a claim,
a plaintiff must allege "enough facts to state a claim to relief that
22  is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S.
544, 570 (2007). In considering Defendant's motion to dismiss, the
23  Court must accept all factual allegations of the complaint as true and
construe those facts, as well as the inferences from those facts, in
24  the light most favorable to Plaintiff. *See Knievel v. ESPN*, 393 F.3d
1068, 1072 (9th Cir. 2005).
25

26      [6] Defendant conceded at oral argument, however, that Plaintiff's
allegation of unfair, deceptive, or illegal acts in violation of
27  California Business & Professions Code § 17200 et seq. does not fall
within the scope of the Agreement's arbitration clause.
28

Resolution Addendum: "All Disputes under this Agreement are subject to the following dispute resolution process." (Pl.'s Opp'n at 3; Anderson Decl. Ex. A at 25.) Plaintiff explains that, because the subject matter of the Complaint does not constitute a dispute under the Agreement, it is not subject to the arbitration clause. (Pl.'s Opp'n at 8-10.)

Plaintiff's identification of the applicable provision governing scope comports with a plain reading of the Dispute Resolution Addendum. The sentence that Defendant highlights regarding application of the arbitration clause "to all causes of action" does not explain which types of disputes between Plaintiff and Defendant are subject to arbitration. This question is answered by the phrase, "Disputes under this Agreement." A plain reading of the sentence in the arbitration clause is that it modifies "disputes under this Agreement," and explains that all claims made in a dispute under the agreement are subject to arbitration regardless of how they are termed or whether they arise under state law or state or federal statute.

The United States Court of Appeals for the Ninth Circuit has held that an arbitration clause, like this one, applying to disputes "arising under" an agreement "is intended to cover a much narrower scope of disputes" than phrases such as "arising out of or relating to" an agreement. *Mediterranean Enters., Inc.*, 708 F.2d at 1464; *Tracer Research Corp.*, 42 F.3d at 1295; *cf. Simula, Inc.*, 175 F.3d at 720-21 & n.3 (construing phrase "all disputes arising in connection with this Agreement" broadly because contract language at issue in *Mediterranean* and *Tracer* was "considerably more narrow in scope"). An arbitration clause that applies to disputes "arising

10

under" an agreement covers "only those [disputes] relating to the interpretation and performance of the contract itself." *Mediterranean Enters., Inc.*, 708 F.2d at 1464; *see also Tracer Research Corp.*, 42 F.3d at 1294-95.

**B.   Relation of Plaintiff's Claims to Interpretation and Performance of the Agreement**

Because the phrase mandating arbitration for "[d]isputes under this Agreement" should be construed narrowly, the arbitration clause in the Prepaid Wireless Product Agreement only applies if the present dispute "relat[es] to the interpretation and performance of the contract itself." *Mediterranean Enters., Inc.*, 708 F.2d at 1464. A court must "'look past the labels the parties attach to their claims to the underlying factual allegations [to determine] whether they fall within the scope of the arbitration clause.'" *Zoran Corp. v. DTS, Inc.*, No. 08-4655, 2009 WL 160238, *2 (N.D. Cal. Jan. 20, 2009) (quoting *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008)). Moreover, that a claim "would not have arisen 'but for' the parties' [agreement] is not determinative." *Tracer Research Corp.*, 42 F.3d at 1295.

Plaintiff contends that its claims do not relate to the interpretation and performance of the Agreement because they are based on Defendant's conduct and promises outside the scope of the Agreement. (Pl.'s Opp'n at 6, 8-10.) The Court agrees. Given the Agreement's narrow arbitration clause, it does not evidence intent to require arbitration of disputes related "only peripherally" to the Agreement or raising "issues largely distinct from" the interpretation and performance of the Agreement. *Mediterranean Enters.* Inc., 708 F.2d at 1464-65; *Cape Flattery Ltd. v. Titan Mar.,*

11

*LLC*, 607 F.Supp.2d 1179, 1188 (D. Haw. 2009). Plaintiff's four causes of action are each independent of the Agreement.

Defendant conceded at oral argument that Plaintiff's claim under California Business & Professions Code § 17200 falls outside the scope of the Agreement's arbitration clause. This section 17200 claim is based on the same factual allegations as Plaintiff's claim against Defendant for Intentional Interference with Prospective Economic Relations. Namely, Plaintiff contends that it should prevail under both causes of action because Defendant knew of Plaintiff's relationships with 780 sub-dealers; intentionally disrupted those relationships; and caused Plaintiff significant monetary damage. (*See* Compl. ¶¶12-13, 20-25.) The Court finds that this alleged conduct is independent of the Agreement; Plaintiff "would have the same claims regardless of whether the Agreement existed." *Cape Flattery Ltd*, 607 F.Supp.2d at 1190. As such, neither cause of action relates to the interpretation and performance of the Agreement. *See, e.g.*, *Mediterranean Enters., Inc.*, 708 F.2d at 1464 (finding claim that Defendant induced breach of Plaintiff's contract with third party "predominately unrelated to the central conflict over the interpretation and performance of the Agreement" because alleged conduct "could have been accomplished even if the Agreement did not exist").

While Plaintiff's remaining claims of false promise and promissory estoppel present a closer case, the Court also finds them to be independent of the Agreement. Plaintiff bases these causes of action on its detrimental reliance on promises that Defendant allegedly made subsequent to the signing of the Agreement regarding a future business relationship between the parties. (*See* Compl. ¶¶6-

12

19.) Specifically, Plaintiff contends that it entered into a collateral oral agreement regarding a long-term relationship between the parties for the distribution of Boost's new product. If Plaintiff ultimately prevails in this action, it will not be based on a breach of the Prepaid Wireless Product Agreement, but, rather, on a breach of separate oral promises upon which Plaintiff relied. *See Tracer Research Corp.*, 42 F.3d at 1294-95 (finding plaintiff's misappropriation of trade secrets claim to be outside scope of agreement since "if proven, defendants' continuing use of Tracer's trade secrets would constitute an independent wrong from any breach of the licensing and nondisclosure agreements").

Moreover, Plaintiff's false promise and promissory estoppel claims also do not relate to the parties' rights and duties under the Agreement. Defendant's alleged promises pertain to a time period after expiration of the March 2007 Agreement between the parties. Similarly, Plaintiff contends that its performance in reliance on these alleged promises was outside the scope of its obligations under the Agreement. (Pl.'s Opp'n at 5.) As a result, these claims do not fall within the scope of the arbitration clause. *See Mediterranean Enters, Inc.*, 708 F.2d at 1465 (finding plaintiff's claim that defendant misappropriated its documents unsuitable for arbitration since it "rais[ed] issues largely distinct from" interpretation of the agreement); *Cape Flattery Ltd*, 607 F.Supp.2d at 1189-90 (finding plaintiff's gross negligence claim outside scope of contract where assessing liability "will not require determining whether Defendant performed under the Agreement"); *Cf. Manetti-Farrow, Inc. v. Gucci Am., Inc*, 858 F.2d 509, 514 (9th Cir. 1988) (applying contract's forum selection clause to plaintiff's tort claims because "[e]ach of

13

the[] claims relate[d] in some way to rights and duties enumerated in the [contract]" and plaintiff's claims could not "be adjudicated without analyzing whether the parties were in compliance with the contract").

Defendant contends that this dispute falls under the Agreement because Plaintiff's claims are based on Defendant's refusal to renew the 2007 Agreement. (Def.'s Reply at 3.) But this is not dispositive. Were Plaintiff's claims based on Defendant's failure to modify the 2007 Agreement to lengthen its one-year term, then they would arguably relate to the interpretation and performance of the Agreement. But Plaintiff is instead claiming that Defendant breached a subsequent promise to renew the Agreement when it expired, as Boost had done in previous years. Regardless of whether Plaintiff will ultimately prevail on its claims of false promise and promissory estoppel, the alleged promises are independent of the current Agreement's provisions.

Defendant also contends that Plaintiff's claims necessarily fall within the scope of the Agreement's arbitration requirement because the Agreement, by its terms, governs the entire relationship between the parties and requires written modification. (Def.'s Reply at 2-5.) At oral argument, Defendant suggested that it will use the Agreement defensively to suggest, for example, that Plaintiff's reliance on subsequent oral promises was not reasonable in light of the Agreement's terms. While Defendant's possible state-law defenses might ultimately prove successful, they are insufficient to bring Plaintiff's independent claims within the scope of a narrow arbitration clause when those claims do not relate to the interpretation and performance of the Agreement.

The Court is mindful of the presumption in favor of arbitrability, but it may not "ignore the unmistakable limits" of the parties' contracted-for arbitration clause. *Zoran Corp.*, 2009 WL 160238, at *6; *see also Tracer Research Corp.*, 42 F.3d at 1295 (quoting *Mediterranean Enters., Inc.*, 708 F.2d at 1464) (noting that an agreement's "omission of the 'relating to' language is 'significant'"). "Given the clarity of Ninth Circuit case law requiring the expansive application of arbitration agreements using any one of a familiar set of broad phrases, parties to an agreement need only employ such phrases to ensure the arbitrability of all claims arising from their relationship or a particular aspect thereof." *Zoran Corp.*, 2009 WL 160238, at *6. The parties in this case agreed instead to a narrow arbitration clause. As such, the Court must effectuate the parties' intent and find Plaintiff's claims outside the scope of the arbitration requirement.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion to compel arbitration and stay proceedings, or in the alternative, to dismiss the complaint is DENIED.


Dated: March 10, 2010


_____
Marc L. Goldman
United States Magistrate Judge

15