O

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| WIRELESS WAREHOUSE, INC. | Case No. SACV 09-1436-MLG |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| BOOST MOBILE, LLC, | |
| Defendant. | |

## I.   Background

### A.   Procedural History

On December 8, 2009, Plaintiff Wireless Warehouse, Inc. ("WWI") filed a complaint against Defendant Boost Mobile, LLC ("Boost") alleging causes of action for (1) false promise; (2) promissory estoppel; (3) intentional interference with prospective economic relations; and (4) unfair, deceptive or illegal acts or practices in violation of California Business and Profession Code § 17000 et seq. (Docket No. 1.) WWI is a wireless communications master dealer that provides services to sub-dealers in the United States. (Compl. ¶6.) Boost is a division of Sprint Mobile that offers pre-paid wireless

phones and services without contracts or activation fees. (Compl. ¶7.) Plaintiff's claims arise out of an alleged oral promise by Boost to enter into a long-term business partner relationship with WWI. (Compl. ¶9.)

On November 4, 2010, Defendant filed a motion for summary judgment with supporting declarations, exhibits, and statement of uncontroverted facts. On November 15, 2010, Plaintiff filed an opposition to the motion with supporting documents. The Court heard oral argument on December 2, 2010, and took the matter under submission. The matter is now ready for decision.[1]

**B.   Factual Background**[2]

The relevant facts, stated in the light most favorable to Plaintiff, are as follows:

Plaintiff and Defendant entered into a one-year written Prepaid Wireless Product Agreement ("PPA") in 2005, which they renewed in March 2006, and again on March 7, 2007, with an effective date of April 1, 2007. (Pl.'s Opp. to Motion for Summ. J. at 2.) The PPA created a distributor-supplier relationship between the parties and outlined the terms by which Plaintiff WWI, the distributor, was to sell Boost's products. (Id.)

Sometime in early 2007, Boost launched a new unlimited service

---

[1] The parties consented to the exercise of jurisdiction by this United States Magistrate Judge. 28 U.S.C. § 636(c).

[2] The Court assumes the truth of these facts only for purposes of determination of Defendant's motion for summary judgment. In fact, many of the operative facts, including the making of the alleged oral promise by Boost's representative to WWI, is contested by Defendant. (*See, e.g.,* Pennington Decl., Ex. C, Deposition of Job Trucker ("Tucker Depo.") at 59:4-61:22; 76:25-77:7; 85:25-87:5; 93:6-94:3; 97:7-13, 98:10-24; 110:11-111:1.)

2

product called Unlimited by Boost ("UBB"). (Pl.'s Opp. at 3.) The C290 handsets were the first model phones offered under Boost's UBB program. (Pennington Decl. in Supp. of Def.'s Mot. for Summ. J., Ex. C, Tucker Depo. at 38:14-17.)

On March 21, 2007, prior to the effective date of the 2007 PPA, Boost sent WWI an attachment to the PPA, which expressly covered the CDMA UBB product line (the "CDMA Attachment"). The CDMA Attachment revised the PPA by, inter alia, (1) establishing that distributors must seek approval for each authorized location in which distributors wished to offer CDMA products; (2) establishing a return policy for CDMA products; (3) setting the gross add bonus for the CDMA handsets (C290) of $5 per new subscriber activation; and (4) listing the fee that distributors may charge consumers to replenish CDMA UBB product accounts. (Anderson Decl. in Supp. of Def.'s Mot. for Summ. J., Ex. B.) The CDMA attachment was sent to Plaintiff through Fedex and was received by Plaintiff on March 22, 2007. (Anderson Decl., Ex. B at 1; Pennington Decl., Ex. D.)

On or about June 1, 2007, Boost invited Howard Kim, Plaintiff's representative, to its main business office in Irvine, California for the purpose of discussing the expansion of its market for UBB. (Pl.'s Opp. at 3.) At Boost's invitation, Kim also attended a conference in Irvine on June 12, 2007. (Id.) While Howard Kim was in California, Job Tucker, the acting vice president of Boost, allegedly told Kim that Boost would enter into a long-term business partner relationship with WWI if WWI would have its sub-dealers across the nation sell Boost's unlimited service, switching their focus from T-Mobile to Boost. (Id.) Job Tucker also allegedly promised to pay Plaintiff $1.00 for each payment and a $3.00 to $20.00 commission per product ("spiff") if

Plaintiff would have its sub-dealers sign up as Boost's prepaid service payment centers. (Id.) According to Kim, between June 2007 and February 2008, Boost set specific targets for its market expansion and continuously encouraged WWI to provide more effort in expanding its markets and establishing more payment centers. (Id. at 4.)

Plaintiff alleges that, between June 12, 2007 and February 28, 2008, in reliance on Boost's alleged oral promises, WWI undertook the following actions: (1) set up new facilities across the nation to handle Boost's new product; (2) hired eight additional salespersons solely for the purpose of expanding the market for Boost; (3) sent its representative to meet with its sub-dealers in order to convince them to promote Boost's new product and to sign up as Boost payment centers; (4) trained its sub-dealers to handle Boost's product and service; and (5) moved to a larger facility with higher monthly mortgage payments and did extensive remodeling on the building. (Id. at 5.)

Because Boost is a prepaid phone brand and does not send monthly bills to customers, in order to collect payment from its customers, Boost utilized several technology service providers ("TSP"). A company named "VIA ONE" was the TSP which dealt with WWI's sub-dealers. In order for WWI to collect the promised "spiff," WWI was required to ask its sub-dealers to sign an application for direct deposit with VIA ONE and to obtain Boost's approval for each retail store and Boost payment center. Between June 2007 and February 2008, WWI obtained more than 700 applications from its sub-dealers, which were approved by Boost as its retail and Boost payment centers. (Id. at 5-6.) Plaintiff claims that, as a result of WWI's efforts and investments, its sub-dealers collected 14,000 payments and were adding approximately 3,000 new subscribers per month by January 2008. (Id. at 8.)

1    Plaintiff alleges that, on or about February 14, 2008, Roger
2    Schlegel, who was then Boost's regional sales manager, informally
3    advised Howard Kim of the following: (1) Boost was going to terminate
4    its relationship with WWI and had never considered WWI a partner; (2)
5    Boost needed WWI to take WWI's sub-dealers' base for its market
6    expansion; and (3) all of the sub-dealers' accounts which belonged to
7    WWI would be transferred to companies run by Vincent Huang and Jack
8    Huston, who were close friends of Job Tucker. (Id. at 9.)

9    In March 2008, Boost terminated its business relationship with
10   Plaintiff and declined to renew the PPA, which by its own terms expired
11   on April 1, 2008. Plaintiff claims that, on or before April 1, 2008,
12   Boost sent notices to all of WWI's sub-dealers, notifying them that WWI
13   would no longer act as Boost's master dealer and that the sub-dealers
14   should switch to other master dealers to continue selling Boost's
15   products. (Id.) On March 25, 2008, WWI sent notices to each of its sub-
16   dealers, advising that it was no longer a master dealer for Boost
17   products and encouraging the sub-dealers to focus their marketing
18   efforts on T-Mobile's products.[3]

19   Plaintiff alleges that, as a result of Plaintiff's reliance on
20   Defendant's oral promise, Plaintiff sustained the following actual
21   damages: (1) $168,645 in total salaries for eight additional
22   salespersons; (2) $250,000 in remodeling costs for the new building;
23   and (3) $237,000 in additional monthly mortgage payments and property
24   taxes. (Id. at 12-13.) Plaintiff also alleges that it sustained over

25

26       [3] Plaintiff is currently involved in an unrelated arbitration
27   proceeding regarding more than $700,000 of Boost and Sprint products
     which Plaintiff ordered and took delivery of but allegedly never paid
28   for. (Forestner Decl. in Supp. of Def.'s Motion for Summ. J., Ex. A, ¶¶
     2-3.)

$1,675,766.59 in expectation damages. (Id. at 13.) Plaintiff further alleges that, as a result of Boost's intentional interference with WWI's business relationship with its sub-dealers, WWI lost T-Mobile commissions, in the amount of $1,948,229.58, for the year 2008. (Id.)

## II.  Standard of Review

Summary judgment is appropriate when, after reviewing the discovery and disclosure materials on file and any affidavits, in the light most favorable to the nonmoving party, the Court determines that "there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, at which time the burden shifts to the nonmoving party to show the existence of a genuine issue. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting Fed. R. Civ. P. 56(e))(emphasis omitted).

## III. Applicable Law

As a preliminary matter, the parties dispute what law governs Plaintiff's claims. Defendant contends that Virginia law applies based upon the choice-of-law provision in the PPA, which provides as follows: "Governing Law: This agreement is governed by the laws of the Commonwealth of Virginia, regardless of conflicts of laws provisions."

6

1  (Anderson Decl. in Supp. of Def.'s Mot. for Summ. J., Ex. A, PPA at 19,
2  ¶ 31.) Plaintiff claims that California law applies because the claims
3  do not arise out of the PPA. (Pl.'s Opp. at 18-19.)

4      Federal courts apply the choice-of-law rules of the state in which
5  they sit. *Shannon-Vail Five, Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th
6  Cir. 2001). California's approach to determining whether to enforce an
7  arm's-length contractual choice-of-law provision reflects a strong
8  policy in favor of enforcement of such provisions. *Nedlloyd Lines B.V.*
9  *v. Super. Ct.*, 3 Cal.4th 459, 464-65 (1992). In making a choice-of-law
10  determination, a court must examine: "(1) whether the chosen state has
11  a substantial relationship to the parties or their transaction, or (2)
12  whether there is any other reasonable basis for the parties' choice of
13  law." *Id.* at 466. If neither standard is met, the Court need not
14  enforce the parties' choice of law. *Id.* If either standard is met, the
15  chosen state's law applies unless it is "contrary to a *fundamental*
16  policy of California." *Id.* (emphasis in original).

17      Here, there was a substantial relationship between the contracting
18  parties and Virginia at the time of the PPA and the oral promise
19  because support services, replenishment operations, certain finance
20  operations, IT services, and legal services related to Boost were
21  provided from Virginia. (York Decl. in Supp. of Def.'s Mot. for Summ.
22  J. at 3.) In addition, because Boost products are distributed across
23  the country, in states with varying laws, Boost had a "reasonable
24  basis" for choosing Virginia law. (York Decl., ¶ 4.) *See, e.g., 1-800-*
25  *Got Junk v. Super. Ct.*, 189 Cal.App.4th 500, 514 (2010). Nor does
26  Plaintiff contend that the choice-of-law clause is contrary to any of
27  California's policy interests.

28      Plaintiff argues that the choice-of-law provision in the PPA is

7

not applicable because its claims are outside the scope of the clause.
In making this argument, Plaintiff relies upon (1) an alleged long-term
partnership between Boost and an unrelated third-party to this action,
VIP Wireless, and (2) the arbitrator's order in the unrelated
arbitration proceeding that Boost be dismissed from the arbitration
relating to WWI's failure to pay for products it obtained under the
PPA.[4] (Pl.'s Opp. at 18-19.) Neither of these arguments is persuasive.
As Defendant points out, there is no admissible evidence in this case
regarding any agreement between Boost and non-party VIP Wireless.
Further, the arbitrator's order dismissing Boost as a party to the
arbitration has no force or effect unless and until it is confirmed by
a court. *See Camping Constr. Co. v. Dist. Council of Iron Workers*, 915
F.2d 1333, 1347-48 (9th Cir. 1990) ("Arbitration awards are not
self-enforcing; and unless an award persuades the party contesting the
arbitrator's authority to comply voluntarily with its terms, it will
have no binding effect on either party until it is confirmed in
court."). Plaintiff makes no claim that an arbitration award has been
converted into a court order or judgment which is binding on this
Court.

Moreover, the *Nedlloyd* court held that a valid choice-of-law
clause, such as the one here, "encompasses all causes of action arising
from *or related to that agreement*, regardless of how they are
characterized, including tortious breaches of duties emanating from the
agreement or the legal relationships it creates." 3 Cal.4th at 470
(emphasis added); *see also Olinick v. BMG Entm't*, 138 Cal.App.4th 1286,

---

[4] Boost was apparently dismissed because it was not a proper party
to the arbitration proceeding. *See* Ex. E to Decl. of Mary Lee in Supp.
of Pl.'s Opp. to Motion for Summ. J.

1300 (2006) (choice-of-law clause applies to claims that are "inextricably intertwined with the construction and enforcement" of the contract). Given the broad application of choice-of-law provisions by California courts, Plaintiff's claims are sufficiently related to the PPA to fall under the scope of the PPA's choice-of-law provision. *See PAE Government Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007)(enforcing contractual choice-of-law provision and applying Virginia rather than California law where alleged promises were made "in connection with" the written agreement).

Accordingly, the Court will enforce the PPA's choice-of-law clause and apply Virginia law to the dispute.

## IV. Discussion

Two of Plaintiff's four claims are not actionable under Virginia law. First, promissory estoppel is not a cognizable cause of action in Virginia. *See Mangold v. Woods*, 278 Va. 196, 202-03 (2009) (expressly refusing to create a cause of action for promissory estoppel); *see also PAE Government Services*, 514 F.3d at 860 (affirming district court's dismissal of promissory estoppel claim because Virginia law "doesn't recognize promissory estoppel as a cause of action"). Second, Plaintiff's cause of action for "unlawful, unfair, or fraudulent business acts or practices," pursuant to California's Business and Professions Code § 17000 et seq., is obviously not cognizable under Virginia law. A valid choice-of-law provision selecting another state's law is grounds to dismiss a claim under California's unfair competition law. *See, e.g., Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F.Supp.2d 842, 862 (N.D.Cal. 2000) (agreement that "construction, interpretation and performance of this Agreement shall be governed by the local laws

of the State of New Jersey" required dismissal of California UCL claims). Moreover, to state a statutory unfair competition claim under Virginia law, a plaintiff must allege and prove "deception, by means of which the goods of one dealer are palmed off as those of another." *Monoflo Internat'l v. Sahm*, 726 F.Supp. 121, 127 (E.D.Va. 1989) (quoting *Benjamin T. Crump Co. v. J.L. Lindsay, Inc.*, 130 Va. 144, 160 (1921)). Here, Plaintiff has not alleged that Boost improperly "palmed off" any of WWI's goods or services as another's or another's goods or services as WWI's.

The Court will now address Plaintiff's two remaining claims under Virginia law:

## A.   False Promise Claim

Plaintiff contends that, at the time that Job Tucker made the alleged oral promise to Plaintiff that Boost would "enter into a long-term business partner relationship if Plaintiff would make its sub-dealers across the nation sell Boost's unlimited service and UBB[,] switching their service from T-mobile to Boost," he did not intend to perform this promise. (Compl. ¶ 9.) Plaintiff further alleges that Defendant intended that Plaintiff rely on the oral promise and that Plaintiff reasonably relied on the promise to its detriment. (Compl. ¶¶ 10, 11.)

In Virginia, to succeed on a claim for fraud, a party must show "(1) a false representation (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (5) resulting damage to the party misled." *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218 (2005). "In Virginia, clear, cogent and convincing evidence is necessary to establish an action for fraud and deceit." *Patrick v. Summers*, 235 Va.

452, 454 (1988)(citing *Carter v. Carter*, 223 Va. 505, 509 (1982)). Clear and convincing evidence is such proof as will establish in the trier of fact a firm belief or conviction concerning the allegations which must be established. *Thompson v. Bacon*, 245 Va. 107, 111 (1993). In addition to proving that a fraudulent material statement or omission of fact was made by the defendant, the plaintiff must also prove by clear and convincing evidence that plaintiff reasonably and justifiably relied on the acts or statements of the defendant, to the plaintiff's detriment. *See Piedmont Trust Bank v. Aetna Cas. & Sur. Co.*, 210 Va. 396, 400 (1969).

Defendant contends that it is entitled to summary judgment on Plaintiff's false promise claim for the following reasons: (1) Plaintiff cannot show that its reliance on the alleged promise was reasonable and justifiable; (2) Plaintiff cannot establish that Defendant intended to mislead Plaintiff at the time the oral promise was made; and (3) Plaintiff has not produced admissible evidence of damages resulting from its reliance on the oral promise. (Def.'s Mot. for Summ. J. at 8-11.)

### 1. Plaintiff Has Not Produced Any Evidence of Reasonable and Justifiable Reliance

Defendant argues that Plaintiff cannot establish reasonable reliance upon the alleged oral promise because Plaintiff was aware that there was a conflicting written agreement on point, that is, the PPA and the CDMA Attachment. Defendant contends that, as a party to the PPA, Plaintiff was aware that several of the express terms of the PPA directly conflicted with the provisions of the alleged oral promise. The alleged oral promise was that Boost would enter into a long-term business partner relationship if Plaintiff would make its retailers

11

across the nation sell UBB, switching their service from T-Mobile to Boost. In addition, Boost would give Plaintiff $1.00 per each payment and a $3.00 to $20.00 commission ("spiff") per product if Plaintiff would make its retailers sign up as Boost's prepaid service centers. (Pennington Decl., Ex. F, Pl.'s Response to Inter. No. 4.)

In contrast, several of the express terms of the PPA and CDMA attachment to the PPA directly conflict with the terms of the oral promise, including: (1) the terms and conditions of the PPA did not "create an agency, franchise, dealership, employment, partnership, landlord-tenant, or joint venture relationship;" (2) the PPA had a one-year term that expired on April 1, 2008; (3) the PPA could not be modified by oral representations; (4) the oral promise relating to the amount of commission WWI would receive on UBB products was governed by the CDMA attachment to the PPA, which expressly set the gross-add bonus for each C290 UBB CDMA phone at $5.00; (5) WWI's distributorship was limited to a territory and was not nationwide; and (6) the PPA did not require that retailers exclusively carry Boost products. (Anderson Decl., Ex. A, PPA.) Therefore, Defendant contends that Plaintiff cannot have reasonably relied upon the oral promise because it directly contradicted the terms of the PPA.

Virginia courts have consistently held that reliance on alleged verbal promises that contradict clearly written statements is unreasonable. *See, e.g., Wynn v. Wachovia Bank, N.A.*, 2009 WL 2147629, *6 (E.D. Va. 2009); *Bd. of Dirs. of Cardinal Place Condo. v. Carrhomes P'ship.*, 58 Va. Cir. 602, 608 (2000) (holding that "a buyer's decision to rely on [an oral misrepresentation as to the seller's identity] was not reasonable, particularly in the face of a document that openly indicates otherwise ...")); *Schryer v. VBR*, 25 Va. Cir. 464, 476 (1991)

1   (because "the terms of the contract were equally known to all
2   parties[,] ... plaintiff's reliance on any representations made by the
3   employer's agent was unreasonable").

4       Plaintiff has not produced any evidence showing the existence of
5   a genuine issue of material fact for trial. In its opposition,
6   Plaintiff merely states that, because Boost is not the "Supplier" under
7   the PPA, and therefore not a party to the PPA, the terms of the PPA are
8   entirely irrelevant to the dispute. (Pl.'s Opp. at 15.) This argument
9   is apparently based on the unexplained arbitration decision and has
10  already been rejected.

11      Plaintiff also argues that its reliance on the oral promise was
12  reasonable because VIP Wireless, a non-party to this action,
13  purportedly had a partnership with Boost and received benefits from
14  this partnership, which it "enjoyed for the past few years." (Id.)
15  Plaintiff offers no factual evidence to support its claim that its
16  reliance was reasonable given a business relationship between Boost and
17  a non-party. Further, the existence of any contractual relationship
18  between Boost and VIP Wireless cannot establish that WWI's reliance on
19  the oral promise was reasonable and justifiable because WWI has never
20  alleged that it relied upon any relationship between VIP Wireless and
21  Boost in its acceptance of the alleged oral promise.

22      In light of the explicit terms of the PPA and the CDMA attachment,
23  it was unreasonable as a matter of law for Plaintiff to rely on the
24  oral representations of Boost's representative, which directly
25  contradicted the terms of the PPA and the CDMA attachment. Plaintiff
26  has not provided any evidence to show that its reliance upon the
27  alleged oral promise was reasonable, and therefore Plaintiff cannot
28  maintain a claim for fraud.

1  //

2

3       **2.    Plaintiff Has Not Produced Any Evidence to Show That**

4            **Defendant Intended to Deceive Plaintiff**

5       Defendant also contends that it is entitled to summary judgment

6  on Plaintiff's false promise claim because Plaintiff has not produced

7  any admissible evidence to demonstrate that Job Tucker, as a

8  representative of Boost, had the "intent to deceive" WWI *at the time*

9  he made the alleged oral promise. Rather, Defendant argues, Plaintiff

10 has shown at most the nonperformance of an oral promise, which is

11 insufficient to demonstrate intent to mislead under Virginia law.

12 (Def.'s Mot. for Summ. J. at 10.)

13      As a general rule, under Virginia law, "fraud must relate to a

14 present or a pre-existing fact, and cannot ordinarily be predicated on

15 unfulfilled promises or statements as to future events." *Patrick*, 235

16 Va. at 454 (citing *Soble v. Herman*, 175 Va. 489, 500 (1940)). The

17 reason underlying the general rule is that "a mere promise to perform

18 an act in the future is not, in a legal sense, a representation, and

19 a failure to perform it does not change its character." *Patrick*, 235

20 Va. at 454.

21      Fraud claims may, however, be "predicated on promises which are

22 made with a present intention not to perform them, or on promises made

23 without any intention to perform them." *Id.* at 454-455 (citing *Lloyd*

24 *v. Smith*, 150 Va. 132, 145 (1928)). The basis for the exception is that

25 "the state of the promisor's mind at the time he makes the promise is

26 a fact," so that, if he misrepresents his state of mind, "he

27 misrepresents a then existing fact." *Lloyd*, 150 Va. at 145-46. A

28 plaintiff nevertheless still bears the burden to present clear, cogent

14

and convincing evidence that the defendant "had the intent to defraud at the time he made the promise." *Patrick*, 235 Va. at 456 (holding that plaintiffs' evidence as to falsity of broker's promise to purchase home failed to meet "the increased proof the law requires to establish fraud").

In its opposition, Plaintiff contends that Job Tucker's contemporaneous intention to mislead can be demonstrated through "Job Tucker's own testimony as well as what Roger Schlegel advised Howard Kim on February 14, 2008." (Pl.'s Opp. at 15.) Plaintiff fails to cite to any evidence in the record to support this contention. From the Court's own review of Job Tucker's deposition testimony, there is no support for Plaintiff's claim that Mr. Tucker had the intent not to perform the oral promise at the time he made it. Indeed, Mr. Tucker repeatedly and emphatically denied that he ever made the alleged oral promise at all, let alone made any statements from which one could infer that he had the contemporaneous intent to deceive WWI. (Pennington Decl. Ex. C, J. Tucker Depo. Tr. at 59:4-61:22; 76:25-77:7; 85:25-87:5; 93:6-94:3; 97:7-13, 98:10-24; 110:11-111:1.) In light of this testimony, there is no evidence to support an intent to deceive at the time the alleged oral promise was made.

Similarly, the deposition testimony of Roger Schlegel provides no support for Plaintiff's contention. During his deposition, Mr. Schlegel stated that at his meeting with Howard Kim on February 14, 2008, the only reason that he gave for Boost's decision not to renew the PPA with WWI was that Boost was exercising the convenience clause in the PPA. (Lee Decl., Ex. C, R. Schlegel Depo. Tr. at 7:20-8:10; 12:1-12.) Mr. Schlegel also denied that he told Howard Kim that Boost was terminating its relationship with WWI because Boost wanted to take WWI's sub-

15

1  dealers. (Schlegel Depo. Tr. at 8:11-9:2.)

2  //

3      Plaintiff has not demonstrated the existence of a genuine issue

4  of material fact regarding whether the alleged oral promise was false

5  at the time it was made. *See, e.g., Albanese v. WCI Communities, Inc.*,

6  530 F.Supp.2d 752, 772-73 (E.D.Va. 2007) (granting summary judgment on

7  fraud claim where plaintiff failed to produce any evidence to show that

8  the defendant knew that the alleged oral promises were false at the

9  time they were made).

10      **3.   Plaintiff Has Not Produced Any Admissible Evidence of**

11           **Damages**

12      Defendant also contends that it is entitled to summary judgment

13  as a matter of law on Plaintiff's false promise claim because Plaintiff

14  has not produced any admissible evidence regarding its alleged damages.

15  Plaintiff alleges that it incurred damages in reliance on the alleged

16  oral promise by hiring new employees, setting up new facilities to

17  handle Boost's business, traveling to visit its sub-dealers to convince

18  them to switch to Boost products, training the sub-dealers regarding

19  UBB, and moving to a new facility with higher rents and a five-year

20  lease. (Compl. ¶ 11.) Defendant contends that each of Plaintiff's

21  claims for damages are fatally speculative and uncertain. (Def.'s Mot.

22  for Summ. J. at 18-19.)

23      Under Virginia law, a plaintiff has the "burden of proving with

24  reasonable certainty the amount of damages and the cause from which

25  they resulted; speculation and conjecture cannot form the basis of

26  recovery." *Carr v. Citizens Bank & Trust Co.*, 228 Va. 644, 652 (1985)

27  (citing *Hale v. Fawcett*, 214 Va. 583, 585 (1974; *Barnes v. Quarries,*

28  *Inc.*, 204 Va. 414, 418 (1963)). Damages based on uncertainties,

contingencies, or speculation cannot be recovered. *Barnes*, 204 Va. at 418. "A plaintiff is not required to prove the exact amount of his damages; however, he is required to show sufficient facts and circumstances to permit a jury to make a reasonable estimate of those damages." *Murray v. Hadid*, 238 Va. 722, 731 (1989).

Defendant argues that the damages claimed by Plaintiff fail under this rule. Defendant contends that all of the evidence regarding Plaintiff's damages is speculative because it is based primarily upon Plaintiff's "guesstimates," rather than any actual evidentiary proof. (Def.'s Mot. for Summ. J. at 18-19.) During his deposition, Howard Kim repeatedly admitted that he arbitrarily fixed a monetary figure for the various kinds of damages suffered by WWI, either to keep the calculations "simple" or because any documentary evidence he had was on his computer which had crashed and been discarded. *See, e.g.*, Pennington Decl., Ex. A, Howard Kim Depo. Tr. at 178:15-18; 178:20-179:4; 181:16-18; 184:6-12; 185:23-186:3; 217:18-22; 223:15-17; Supp. Pennington Decl., Ex. A, 11/17/10 Howard Kim Depo. Tr. at 119:25-120:9; 121:22-122:12; 122:12-123:2, 122:13-123:2; 129:9-130:4; 132:22-133:10.

In its opposition, Plaintiff does not set forth any evidence establishing a genuine issue of material fact sufficient to survive a motion for summary judgment, but merely refers to the declaration of Howard Kim, which in turn merely restates the amount of Plaintiff's alleged monetary damages without providing any supporting evidence. Thus, Plaintiff has failed to present evidence to establish a genuine issue of material fact for the jury regarding its alleged damages.

In sum, Defendant is entitled to summary judgment as to Plaintiff's false promise claim because no reasonable jury could find

17

that Plaintiff had proven fraud by "clear, cogent and convincing evidence," as required under Virginia law. *See, e.g., Petra Intern. Banking Corp. v. First American Bank of Virginia*, 758 F.Supp.1120, 1139 (E.D.Va. 1991) (granting summary judgment where plaintiff failed to set forth any facts that a reasonable jury could find as "clear, cogent, and convincing evidence" of fraud).

### B. Interference With Prospective Economic Advantage

Plaintiff alleges that Defendant knew about the economic relationship between Plaintiff and its 780 sub-dealers and that Defendant intended to disrupt these relationships by sending notices to all of WWI's sub-dealers informing them that WWI could no longer act as Boost's master dealer and thereby causing all of WWI's sub-dealers to terminate their contractual and/or business relationship with WWI. Plaintiff further alleges that Boost then placed a close friend of its executive officer in the position of master dealer who received $1 per payment and $3 per product based upon all the transactions made by Plaintiff's sub-dealers. (Compl. ¶¶ 12, 13, 21-24.) As a result of this wrongful conduct by Defendant, Plaintiff alleges that the relationship between WWI and its sub-dealers was disrupted and Plaintiff sustained actual damages in excess of $4 million. (Compl. ¶ 25.)

The elements of a cause of action for wrongful interference with prospective business or economic advantage under Virginia law are as follows: "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff." *Glass v. Glass*, 228 Va. 39, 51 (1984).

18

1  //

2

3       In its opposition, Plaintiff states that it has shown that: "(1)
4  it maintained an economic relationship with 780 sub-dealers and from
5  them Plaintiff earned substantial income every month; (2) Boost had
6  knowledge of the relationships and approved each of them and the
7  applications for the payment locations; (3) Plaintiff was induced to
8  create these sub-dealers to become Boost payment centers; and (4) the
9  relationship between the sub-dealers and Plaintiff were disrupted by
10  wrongfully misappropriating these accounts to VIP Wireless and VHA
11  Wireless. As an independent wrong, Plaintiff alleged and has shown that
12  Defendant made a false promise without any intent to perform it."
13  (Pl.'s Opp. at 16-17.)

14       Defendant contends that it is entitled to summary judgment on this
15  claim for the following reasons: (1) Plaintiff has not produced
16  evidence establishing the independent wrongfulness of Boost's alleged
17  conduct; (2) Plaintiff has not alleged or produced admissible evidence
18  of future economic benefit with its sub-dealers; (3) Plaintiff has not
19  produced admissible evidence of economic relationships with its 780
20  sub-dealers; (4) Plaintiff has not produced evidence of any disruption
21  actually caused by Boost; and (5) Plaintiff cannot produce admissible
22  evidence of damages caused by Boost's alleged wrongful interference.
23  (Def.'s Mot. for Summ. J. at 13-15.)[5]

24            **1.   Plaintiff Has Produced No Evidence to Establish the**
25                 **Independent Wrongfulness of Defendant's Conduct**
26       Under Virginia law, in a claim for interference with prospective
27  economic relationships, a plaintiff must allege that the interfering

28  _____

         [5] The Court will only discuss factors one, two and five above and
does not reach the remaining factors.

party used "improper methods." *Masco Contractor Servs. E., Inc. v. Beals*, 279 F.Supp.2d 699, 709 (E.D.Va. 2003) (citing *Commerce Funding Corp. V. Worldwide Sec. Serv. Corp*, 249 F.3d 204, 213 (4th Cir. 2001); *Duggin v. Adams*, 234 Va. 221, 227 (1987)). Improper methods may include the violation of a statute, trade standard, sharp dealing, overreaching, or unfair competition. *Simbeck, Inc. v. Dodd-Sisk Whitlock Corp.*, 44 Va. Cir. 54, 1997 WL 1070458, at *6 (Va.Cir.Ct. 1997) (citations omitted); *see also Commerce Funding Corp.*, 249 F.3d at 214.

Plaintiff has not shown that there is a disputed material fact sufficient to overcome a motion for summary judgment regarding Defendant's alleged wrongful conduct. Defendant's act of refusing to renew the PPA and informing WWI's sub-dealers that WWI was no longer the master dealer for Boost products is not independently wrongful. In fact, Plaintiff admitted that, under the terms of the PPA, Boost was legally entitled not to renew its contract with WWI. (Pennington Decl., Ex. A, Kim Depo. Tr. at 88:2-6.) Thus, Plaintiff has failed to produce any admissible evidence to show that Defendant used any "improper methods" to interfere with WWI's relationship with its sub-dealers. In addition, because Plaintiff's claim for false promise fails as a matter of law, as discussed above, the alleged false promise also cannot form the basis for a showing of an independent wrong.

### 2. Plaintiff Has Not Alleged or Produced Any Admissible Evidence of Future Economic Benefit With Its Sub-dealers

Defendant next contends that Plaintiff has not alleged or produced any evidence sufficient to overcome a motion for summary judgment regarding the probability that its relationship with its retailers would result in future economic benefit but for Boost's conduct.

20

(Def.'s Mot. for Summ. J. at 14.) "Mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain a cause of action." *Commercial Business Systems, Inc. v. Halifax Corp.*, 253 Va. 292, 301 (1997). Further, the proof must establish a "probability" of future economic benefit to a plaintiff. Proof of a "possibility" that such benefit will accrue is insufficient. *Id.*

Here, Plaintiff has not produced any evidence of a "probability" of future economic benefit with its sub-dealers absent the alleged intentional interference by Defendant. (Pennington Decl., Ex. G, Pl.'s Further Responses to Request for Production No. 55; Ex. E.) Indeed, as Defendant points out, Plaintiff admitted that WWI's sub-dealers are free to terminate their relationship with WWI at any time. (Def.'s Mot. at 14; Kim Depo. Tr. at 137:10-13.) Thus, Plaintiff has failed to put forth any genuine issue of material fact to establish the "probability" of future economic benefit in its relationships with its sub-dealers.

**3.    Plaintiff Has Not Produced Any Admissible Evidence of Damages Caused by Defendant's Alleged Wrongful Interference**

As discussed above, Plaintiff has not produced any admissible evidence of damages sufficient to survive a motion for summary judgment.

In sum, Defendant is entitled to summary judgment as to Plaintiff's claim for intentional interference with prospective economic advantage.

//

//

//

**IV.  Conclusion**

  For the foregoing reasons, Defendant's motion for summary judgment is GRANTED as to all of Plaintiff's claims. IT IS ORDERED that judgment be entered dismissing the action with prejudice.

Dated: January 11, 2011

                _____

                Marc L. Goldman
                United States Magistrate Judge